[No. D050305. Fourth Dist., Div. One. Sept. 5, 2008.]

PLATYPUS WEAR, INC., et al., Plaintiffs and Respondents, v.
MARTIN GOLDBERG, Defendant and Appellant.

774

**Counsel**

Sullivan, Hill, Lewin, Rez & Engel, David B. Hopkins, Candace M. Carroll and Robert P. Allenby for Defendant and Appellant.

Vantage Law Group, Michael H. Riney and Karen B. King for Plaintiffs and Respondents.

**OPINION**

**AARON, J.—**

I.

INTRODUCTION

In October 2004, Platypus Wear, Inc., PW Industries, Inc. (collectively Platypus), Alexandra Ponce de Leon, and Sylvia Offner Caira, filed a complaint against Luce Forward Hamilton & Scripps, and two of its attorneys, Kevin A. Cahill and Timothy R. Pestotnik (collectively Luce Forward), Baker & McKenzie, and two of its attorneys, Charles H. Dick and Peter W. Ito, Laurens Offner (Laurens), and Martin Goldberg.[1] Among other claims, Platypus alleged that Goldberg had acted illegitimately as Platypus's chief financial officer, and that he assisted Laurens in taking a number of actions that had harmed Platypus's interests. In October 2006, more than two years after Platypus filed its complaint, Goldberg filed an application for leave of court to file a late special motion to strike the complaint (anti-SLAPP motion) (Code Civ. Proc., § 425.16).[2] A party may not file an anti-SLAPP motion more than 60 days after the filing of the complaint, unless the trial court affirmatively exercises its discretion to allow a late filing. (§ 425.16, subd. (f).) The trial court granted Goldberg's application to file a late anti-SLAPP motion. Goldberg filed an anti-SLAPP motion, which the trial court denied on the merits.

In this interlocutory appeal, Goldberg claims that the trial court erred in denying his anti-SLAPP motion. Platypus claims that the trial court erred in granting Goldberg's application to file the anti-SLAPP motion, and that the court properly denied the anti-SLAPP motion on the merits.

While there are no published cases in which a court has considered whether a trial court abused its discretion in granting a party's request to file a late anti-SLAPP motion, courts in several cases have discussed the purpose of the statutory 60-day period in affirming trial courts' refusals to consider a late filed anti-SLAPP motion on the merits. (See *Kunysz v. Sandler* (2007) 146 Cal.App.4th 1540, 1543 [53 Cal.Rptr.3d 779] (*Kunysz*); *Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 286 [35 Cal.Rptr.3d 909] (*Olsen*); *Morin v.*

---

[1] Platypus and Goldberg are the only remaining parties in the litigation, and are the only parties to this appeal.

[2] "SLAPP" stands for strategic lawsuit against public participation. (See *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57 [124 Cal.Rptr.2d 507, 52 P.3d 685].) Unless otherwise specified, all subsequent statutory citations are to the Code of Civil Procedure.

*Rosenthal* (2004) 122 Cal.App.4th 673, 681 [19 Cal.Rptr.3d 149] (*Morin*).) For example, the *Olsen* court emphasized that the availability of an interlocutory appeal from the denial of an anti-SLAPP motion is related to the requirement that most such motions will be filed within 60 days of the filing of the complaint. (*Olsen, supra,* 134 Cal.App.4th at p. 287.) Such procedures facilitate the primary purpose of the anti-SLAPP statute, i.e., ensuring the *prompt* resolution of lawsuits that impinge on a defendant's free speech rights. (*Kunysz, supra,* 146 Cal.App.4th at p. 1543.) In exercising its discretion in considering a party's request to file an anti-SLAPP motion *after* the 60-day period, a trial court must carefully consider whether allowing such a filing is consistent with this purpose.

In the present case, Goldberg failed to provide a compelling explanation for why he did not file an application for permission to file an anti-SLAPP motion earlier in the case. Goldberg did not articulate any extenuating circumstances justifying a late filing. In particular, he did not explain why he did not file the application until after the parties had completed substantial discovery in the case. Under these circumstances, we conclude that the trial court abused its discretion in granting Goldberg's application to file his anti-SLAPP motion. We therefore reverse the trial court's order granting Goldberg's application to file the anti-SLAPP motion and vacate the trial court's ruling on the merits of the motion.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

In its October 2004 complaint, Platypus alleged that Goldberg illegitimately acted as Platypus's chief financial officer and as a member of Platypus's board of directors from April 2002 through June 2003. Platypus claimed that Goldberg took a number of actions that were detrimental to Platypus's interests during this period, including receiving unauthorized compensation, causing Platypus to pay Laurens's personal legal fees, and wasting corporate assets. In a 53-page complaint, Platypus brought eight claims against Goldberg, including breach of fiduciary duty, aiding and abetting breach of a fiduciary duty, conversion, intentional and negligent interference with contractual relations, intentional and negligent interference with prospective economic advantage, and unfair business practices. The complaint also contained numerous claims against Luce Forward arising out of its prior representation of Platypus.

In December 2004, Goldberg answered the complaint.

On February 18, 2005, the trial court denied Luce Forward's motion to compel arbitration and stay the litigation pending arbitration. On February 25,

Luce Forward filed an interlocutory appeal of the trial court's February 18 order. On March 11, Goldberg filed a motion to stay further trial proceedings pending resolution of Luce Forward's appeal. On March 25, the trial court stayed all proceedings in the case, pending the outcome of Luce Forward's appeal.

In February 2006, this court affirmed the trial court's denial of Luce Forward's petition to compel arbitration. (*Platypus Wear, Inc. v. Cahill* (Feb. 7, 2006, D046020) [nonpub. opn.].) In April, the remittitur issued in *Platypus Wear, Inc. v. Cahill, supra,* D046020. Also in April, the trial court lifted the stay of the trial court proceedings. In May, the trial court set a discovery cutoff date of September 29, 2006, and a trial date of October 20, 2006.

In June 2006, Luce Forward filed a motion seeking a determination that a settlement agreement between Platypus and Luce Forward had been entered into in good faith. In July, Goldberg filed an opposition to Luce Forward's motion. On July 18, the trial court granted Luce Forward's motion.

Also in July 2006, Goldberg requested a continuance of the trial date and the related discovery cutoff dates, and sought the appointment of a discovery referee. On August 18, the trial court granted Goldberg's request to continue the trial as "a last continuance." The court set December 15, 2006, as the discovery cutoff date and January 26, 2007, as the date for trial.

On October 31, 2006, Goldberg filed an ex parte application requesting that the court allow him to file an anti-SLAPP motion, and also asking that the trial date be continued for six months. Goldberg advanced three primary reasons why the trial court should grant his application. First, Goldberg argued that the public policy behind the anti-SLAPP statute supported granting the application. Goldberg maintained that he was seeking to file a potentially meritorious anti-SLAPP motion, and that he would be denied the opportunity to litigate the issue if the court were to deny his application. Second, Goldberg claimed that judicial economy would be served by allowing the filing because his meritorious motion would likely "dramatically pare down, if not entirely eliminate[]" the issues to be resolved at trial. Finally, Goldberg claimed that he would be willing to agree to several conditions designed to eliminate any prejudice Platypus might suffer as a result of the late filing. Specifically, Goldberg stated that he would agree to limit any attorney fees recoverable pursuant to the anti-SLAPP statute to those fees and costs directly related to the anti-SLAPP motion, and would also agree that Platypus could offset any such recovery by the fees and costs Platypus had directly incurred in prosecuting the action against Goldberg after the initial 60-day period for filing an anti-SLAPP motion as of right. Goldberg also stated that he would be willing to allow discovery to continue while his anti-SLAPP motion was pending.

In a footnote to his application, Goldberg stated that the "delay in this case is largely attributable to the manner in which this case proceeded." Goldberg noted that his present counsel was not counsel of record during the initial 60-day period after the filing of the complaint. Goldberg further stated that until the parties had conducted substantial discovery in the case, he had not appreciated that "virtually all of Plaintiffs' claims against him [involved] privileged and constitutionally protected conduct" on his part. Goldberg claimed that discovery had been delayed for various procedural reasons, including the stay of the trial court proceedings that occurred between March 2005 and April 2006.

Platypus filed an opposition to Goldberg's ex parte application. In its opposition, Platypus argued that the purpose of the anti-SLAPP statute—i.e., to foster the prompt resolution of lawsuits—would be undermined by allowing the late filing, and that Goldberg had offered no legitimate explanation for the approximately two-year delay in filing the motion. Platypus claimed that Goldberg's simultaneous request for a continuance of the trial date was "telling," and reflected an "attempted manipulation of the anti-SLAPP statute." Platypus also requested that, to the extent the court was inclined to consider granting Goldberg's application, the parties be afforded the right to brief the issue of the timeliness of the request in a properly noticed motion.

On November 1, 2006, the trial court held a hearing on Goldberg's application. At the outset of the hearing, the court indicated that its tentative ruling was to grant the application. The court acknowledged that Goldberg had filed the application "very late in the game," and noted that he had previously requested a continuance of the trial date. However, the court observed that the case was "fairly complex," and commented that Goldberg's prospective anti-SLAPP motion might provide a way of making the case more "manageable." "Narrow[ing] the issues," the court stated, "[is] probably in everyone's best interests."

Platypus's counsel, who appeared telephonically at the hearing, argued that Goldberg had failed to offer any explanation as to why he had not filed the application earlier,[3] and suggested that there was thus no basis for the court to exercise its discretion to allow the late filing. In addition, Platypus's counsel argued that Goldberg could litigate the same defenses he sought to raise in the proposed anti-SLAPP motion by way of a motion for judgment on the pleadings, or a motion for summary judgment, instead.

Goldberg's counsel argued that one of the reasons Goldberg wanted to bring an anti-SLAPP motion was because the trial court had greater discretion

---

[3] At the outset of Platypus's counsel's argument, the trial court acknowledged that it had read only approximately three-fourths of Platypus's opposition to the application.

to "parse causes of action," in ruling on such a motion, than the court would have in considering a motion for judgment on the pleadings. Goldberg's counsel explained that the delay in bringing the application was partially due to the fact that the case had been "focused on other issues," and that counsel had not "appreciate[d]" the anti-SLAPP issue in the case until Platypus's deposition of Goldberg in late July or August 2006. Goldberg's counsel also noted that his firm had not been counsel of record during the 60-day window following Platypus's filing of the complaint.

The court granted Goldberg's application to allow the late filing of the anti-SLAPP motion, subject to most of the conditions Goldberg proposed in his application.[4] The trial court denied Goldberg's request to continue the trial and case management dates. The court stated that it would consider continuing the trial readiness conference and the trial date at the hearing on the anti-SLAPP motion. After conferring with the parties, the court set a briefing schedule for the anti-SLAPP motion, and set January 12, 2007, as the date for a hearing on the motion.

On November 13, 2006, Platypus filed an ex parte application, seeking to condition Goldberg's filing of an anti-SLAPP motion on a waiver of Goldberg's right to appeal the trial court's ruling on the motion. Platypus argued, "The year-long delay inherent in a direct appeal from an order denying Mr. Goldberg's proposed anti-SLAPP motion should not be permitted at this time in this case, any more than it would be permitted upon the denial of a routine motion for summary judgment."

Goldberg opposed the application. In his opposition, Goldberg argued that Platypus's application was really an improper motion for reconsideration, that the trial court could not deprive this court of its jurisdiction or insist on a waiver of Goldberg's right to appeal, and that Platypus's remedy for any potentially frivolous appeal of the denial of Goldberg's anti-SLAPP motion would be a motion to dismiss the appeal in this court. After holding a hearing, the trial court denied Platypus's application.

On November 27, 2006, Goldberg filed an anti-SLAPP motion. On December 1, Platypus filed an application to file an oversized opposition to the motion. That same day, Goldberg opposed Platypus's application to file the oversized opposition, and requested, in the alternative, that if the court were to grant Platypus's application, Goldberg be allowed additional time to reply. Goldberg noted that granting him additional time to file a reply might

---

[4] The trial court stated that any potential fees Goldberg might recover would be limited to those associated with the anti-SLAPP motion, and that there would be no stay of discovery. The court did not refer to Goldberg's offer to offset any fee recovery with a portion of Platypus's attorney fees.

necessitate rescheduling the hearing on the anti-SLAPP motion. On December 4, the trial court granted Platypus's request to file an oversized motion, and rescheduled both the date for Goldberg's filing of a reply and the date for the hearing on the anti-SLAPP motion.

On December 29, 2006, Platypus filed an opposition to the anti-SLAPP motion. Goldberg subsequently filed a reply.

On January 19, 2007, the trial court held a hearing on the anti-SLAPP motion. On January 22, the court reset the trial readiness conference date to February 16, and the trial date to February 23.

On January 30, the court denied Goldberg's anti-SLAPP motion in its entirety, ruling that Goldberg failed to demonstrate that Platypus's lawsuit arose out of constitutionally protected activity. Two days later, Goldberg filed this interlocutory appeal (§§ 425.16, subd. (i), 904.1, subd. (a)(13)).

### III.

### DISCUSSION

*The trial court abused its discretion in granting Goldberg's application to file a late anti-SLAPP motion*

Platypus claims that the trial court erred in granting Goldberg's application to file a late anti-SLAPP motion.

### A. *Reviewability*

Section 904.1 provides in relevant part:

"(a) An appeal, other than in a limited civil case, is to the court of appeal. An appeal, other than in a limited civil case, may be taken from any of the following: [¶] . . . [¶]

"(13) From an order granting or denying a special motion to strike under Section 425.16."

Section 906 provides in relevant part: "Upon an appeal pursuant to Section 904.1 . . . the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . and may affirm, reverse or modify any judgment or order appealed from and may direct the proper judgment or

order to be entered, and may, if necessary or proper, direct a new trial or further proceedings to be had. *The respondent, or party in whose favor the judgment was given, may, without appealing from such judgment, request the reviewing court to and it may review any of the foregoing matters for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken.* The provisions of this section do not authorize the reviewing court to review any decision or order from which an appeal might have been taken." (Italics added.)

Goldberg filed an interlocutory appeal of the trial court's denial of his anti-SLAPP motion. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).) In its respondent's brief, Platypus sought review of the trial court's November 1, 2006 order granting Goldberg's application to file a late anti-SLAPP motion. Such review is authorized pursuant to the italicized portion of section 906 quoted above.[5]

### B. *Waiver/forfeiture*

Goldberg maintains that Platypus has waived any claim that the trial court erred in granting his application to file an anti-SLAPP motion.[6] Goldberg advances two primary arguments in support of this claim. First, Goldberg notes that "[i]ssues are waived on appeal if not raised before the trial court," and argues that Platypus "never told [the trial court] that granting Goldberg's application would be an abuse of discretion." This argument is without merit. Platypus filed a written opposition to Goldberg's application and orally urged the court not to grant Goldberg's application. In its opposition, Platypus noted that Goldberg was statutorily prohibited from filing his anti-SLAPP motion unless the trial court "affirmatively exercis[ed] its discretion to permit such late filing," and argued that "California law does not support [granting] such affirmative relief to Mr. Goldberg." Platypus plainly raised the issue in the trial court.

Second, Goldberg suggests that Platypus's act of participating in the setting of a briefing schedule for the anti-SLAPP motion, its failure to oppose the one-week delay in rescheduling the hearing on the anti-SLAPP motion, and its opposing the anti-SLAPP motion on the merits, constitute a forfeiture of its right to contest the court's granting of the application to file the motion.

---

[5] Goldberg does not claim otherwise on appeal.

[6] Although denominated a "waiver" by Goldberg, his claim is more properly characterized as one involving an allegation of "forfeiture." (*People v. Simon* (2001) 25 Cal.4th 1082, 1097, fn. 9 [108 Cal.Rptr.2d 385, 25 P.3d 598] [" 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right." [Citations.]' [Citation.]"].)

Platypus's participation in the setting of the briefing and hearing schedule on the anti-SLAPP motion and Platypus's filing an opposition to the motion on the merits occurred after Platypus had fully contested Goldberg's application to allow the filing and after the court granted Goldberg the right to file the anti-SLAPP motion. Having adequately raised its objection to Goldberg's filing of the anti-SLAPP motion, Platypus did not forfeit its right to oppose on appeal the filing of Goldberg's anti-SLAPP motion, through its later actions in responding to the motion.

Accordingly, we reject Goldberg's claim that Platypus has waived or forfeited review of the trial court's ruling granting Goldberg's application to file an anti-SLAPP motion.

## C. *Standard of review*

A trial court's ruling on an application to file a late anti-SLAPP motion is reviewed for an abuse of discretion. (See *Olsen, supra,* 134 Cal.App.4th at p. 286.) In *Olsen,* the court described the meaning of the abuse of discretion standard of review in this context: "There are two ways to show an abuse of discretion by the trial court. One way is to show the ruling was whimsical, arbitrary, or capricious, i.e., that the trial court exceeded the bounds of reason. [Citation.] The other way is to show the trial court erred in acting on a mistaken view about the scope of its discretion. [Citation.] Here that would require showing (1) the grounds given by the court for finding the anti-SLAPP motion untimely are inconsistent with the substantive law of section 425.16, or (2) the application to the facts of this case is outside the range of discretion conferred upon the trial court under that statute, read in light of its purposes and policy. [Citation.]"[7] (134 Cal.App.4th at p. 285.)

## D. *Governing law*

Section 425.16 provides in relevant part: "(f) The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper."

■ In *Olsen, supra,* 134 Cal.App.4th at page 280, the defendant filed an anti-SLAPP motion 278 days after service of the complaint. The trial court denied the motion as untimely, and the defendant appealed. The *Olsen* court dismissed the appeal and imposed sanctions on the defendant, concluding that the appeal was frivolous. (*Id.* at p. 289.) In reaching this disposition, the court noted that the availability of an interlocutory appeal from the denial of an

---

[7] As described in further detail in part III.D., *post,* in *Olsen,* the court reviewed a trial court's denial of an anti-SLAPP motion as untimely. (*Olsen, supra,* 134 Cal.App.4th at p. 280.)

anti-SLAPP motion and its attendant stay of trial court proceedings present the possibility for abuse of the anti-SLAPP statute: "Both the Legislature and the Supreme Court have acknowledged the ironic unintended consequence that anti-SLAPP procedures, enacted to curb abusive litigation, are also prone to abuse. As to abuse occasioned by the stay of proceedings on appeal of the denial of an anti-SLAPP motion, the Supreme Court has 'encouraged' us 'to resolve these . . . appeals as expeditiously as possible. To this end, reviewing courts should dismiss frivolous appeals as soon as practicable and do everything in their power to " 'prevent . . . frustration of the relief granted.' " ' [Citation.]" (*Olsen, supra*, 134 Cal.App.4th at pp. 283–284, fns. omitted.)

In the course of concluding that the defendant's appeal was frivolous and sanctionable, the court outlined the purpose of the 60-day limitation: "There are two potential purposes of the 60-day limitation. One is to require presentation and resolution of the anti-SLAPP claim at the outset of the litigation before the parties have undertaken the expenses of litigation that begin to accrue after the pleading stage of the lawsuit. The other is to avoid tactical manipulation of the stays that attend anti-SLAPP proceedings. The 'prejudice' to the opponent pertinent to these purposes is that which attends having to suffer such expenses or be subjected to such a stay." (*Olsen, supra*, 134 Cal.App.4th at p. 287.)

In *Morin, supra*, 122 Cal.App.4th at pages 678 to 682, the court considered whether a trial court had abused its discretion in denying the defendants' request to allow a filing of an anti-SLAPP motion approximately one month past the 60-day statutory period. As in *Olsen*, the *Morin* court emphasized that the purpose of the SLAPP statute is to facilitate the prompt resolution of lawsuits: "The overall purpose of the SLAPP statute is to provide defendants with a procedural remedy 'which would allow *prompt* exposure and dismissal of SLAPP suits.' [Fn. omitted.] The 60-day period in which a defendant may file a SLAPP motion as a matter of right appears to be intended to permit the defendant to test the foundation of the plaintiff's action before having to 'devote its time, energy and resources to combating' a 'meritless' lawsuit. [Fn. omitted.]" (*Morin, supra,* 122 Cal.App.4th at p. 681.)

In concluding that the trial court had not abused its discretion in denying the defendants' request, the *Morin* court noted that the defendants had not acted in a fashion consistent with the purpose of the anti-SLAPP statute: "Here, instead of attempting to promptly expose and dismiss Morin's suit as a SLAPP, defendants chose to devote their time, energy and resources to moving the case from state court to federal court and, after remand from the

federal court,[8] moving the case from one branch of the superior court to another and then from one judge to another in the chosen branch." (*Morin, supra*, 122 Cal.App.4th at p. 681.)

■ Similarly, in *Kunysz, supra*, 146 Cal.App.4th at page 1543, the court concluded that the trial court had not erred in denying as untimely the defendant's renewed anti-SLAPP motion, which was filed nine months after the plaintiff filed a first amended complaint. The *Kunysz* court reasoned in part: "[T]he purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case. [Citation.] That consideration, obviously, no longer applies once the complaint has been answered and the case has been pending for nearly a year." (*Ibid.*)

E. *Application*

In this case, the delay in filing the application to file an anti-SLAPP motion was much greater than in *Olsen, Morin,* or *Kunysz,* in which the trial courts *denied* the defendants the right to file an anti-SLAPP motion.[9] Further, by the time Goldberg filed his application on October 31, 2006, the parties had already completed a substantial amount of discovery, and the trial was scheduled to commence in less than three months.[10] By the time the trial court held a hearing on Goldberg's anti-SLAPP motion, on January 19, 2007, the December 15, 2006 discovery cutoff date had already passed, and the trial was scheduled to begin in a week. Thus, one of the basic purposes of the anti-SLAPP statute—to allow for the prompt resolution of disputes before significant pretrial discovery expenses are incurred—could not be met in this case. In fact, allowing the late filing *undermined* this goal, in that the trial court continued the trial date, at Goldberg's request, after the hearing on the anti-SLAPP motion.

The primary reasons that Goldberg offered, and that the trial court cited, for allowing the late filing of his anti-SLAPP motion were that doing so would serve both judicial economy and the public policy behind the anti-SLAPP statute. However, these reasons could apply to *any* late filing.

[8] The *Morin* court concluded that the trial court had correctly determined that the defendants were entitled to a 60-day period after the case was remanded from federal court in which to file their anti-SLAPP motion. (*Morin, supra*, 122 Cal.App.4th at p. 679.)

[9] In *Kunysz,* the trial court denied the anti-SLAPP motion itself as untimely because the defendant failed to seek leave of court to file the motion. (*Kunysz, supra*, 146 Cal.App.4th at p. 1543.)

[10] Goldberg supported his application with a declaration from his counsel that described in great detail the voluminous discovery that had already been undertaken in the case. For example, Goldberg's counsel stated that, "[p]laintiffs [had] produced . . . between 1.1 and 1.375 million pages of documents."

Implicit in Goldberg's argument is the premise that a trial court should hear any potentially anti-SLAPP meritorious motion,[11] no matter how late in the case it is filed. The *Olsen* court rejected this argument. (*Olsen, supra*, 134 Cal.App.4th at p. 286 ["Discretion to permit or deny an untimely motion cannot turn on the final determination of the merits of the motion."].) In addition, because Goldberg could have attempted to narrow the issues in the case by way of a motion for summary judgment or a motion for judgment on the pleadings, these rationales have very little persuasive force. (See *Kunysz, supra*, 146 Cal.App.4th at p. 1543 ["The same issues raised by [the defendant's] renewed anti-SLAPP motion could just as easily have been raised by, for example, a motion for summary judgment or a motion for judgment on the pleadings."].)[12]

■ Goldberg's offers to "avoid" prejudice to Platypus caused by the filing of the late motion are, for the most part, illusory. With respect to Goldberg's offer to limit attorney fees to those recoverable in prosecuting the anti-SLAPP motion, his recovery would have been so limited as a matter of law even without his "offer." (See *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1383 [46 Cal.Rptr.2d 542] ["the Legislature intended that a prevailing defendant on a[n] [anti-SLAPP motion] be allowed to recover attorney fees and costs only on the [anti-SLAPP motion], not the entire suit"].) Goldberg's offer to *offset* his potential fee recovery with certain attorney fees that Platypus incurred in the litigation would not *reimburse* Platypus for fees it had incurred in the post-60-day filing period, to the extent those fees exceeded Goldberg's recovery. Since the parties had already completed extensive discovery, Goldberg's offer to allow discovery to continue would not obviate all of the potential prejudice Platypus would incur as a result of the late filing. Further, Goldberg made no offer to ameliorate the primary prejudice that Platypus was likely to suffer from the trial court's granting of his application—the lengthy delay in bringing its claims to trial caused by Goldberg's potential interlocutory appeal of the court's anti-SLAPP ruling. ■ Finally, Platypus was not required to demonstrate prejudice in opposing Goldberg's motion, in any event. (*Olsen, supra*, 134 Cal.App.4th at p. 287 ["a plaintiff opposing a late anti-SLAPP motion need not demonstrate prejudice"].)

The arguments Goldberg made at the hearing on his application are equally unpersuasive. Goldberg's counsel's explanation that Goldberg did not file an anti-SLAPP motion earlier because the case had been "focused on other issues," is little different from the explanation the *Morin* court rejected, i.e.,

---

[11] The trial court ultimately denied Goldberg's anti-SLAPP motion on the merits.

[12] By filing an anti-SLAPP motion, rather than a motion for summary judgment or a motion for judgment on the pleadings, Goldberg ensured that if the court denied his motion, the denial would become immediately appealable.

that the party had been "devot[ing] its time, energy and resources," to litigating the case rather than pursuing an anti-SLAPP motion. (*Morin, supra,* 122 Cal.App.4th at p. 681.) "[I]nstead of attempting to promptly expose and dismiss [Platypus's] suit as a SLAPP" (*ibid.*), Goldberg, among other actions, filed an answer, joined in Luce Forward's motion to stay all of the proceedings pending Luce Forward's interlocutory appeal, opposed Luce Forward's motion for a determination that it had settled the case in good faith, requested to continue the trial and discovery cutoff dates, sought the appointment of a discovery referee, and, as noted above, engaged in extensive discovery.

Goldberg's suggestion at the hearing that the trial court should grant his application to allow the late filing because his current counsel had not been counsel of record during the initial 60-day period is also without merit. Goldberg's current counsel substituted into the case in March of *2005*, far in advance of the October 31, 2006 application to allow a late filing. (*Olsen, supra,* 134 Cal.App.4th at p. 285 ["A claim of excuse from untimeliness based on late discovery after obtaining new counsel is generally unavailing."].) In addition, Goldberg's counsel's suggestion that Goldberg should be allowed to bring the anti-SLAPP motion in order to afford the trial court greater discretion to "parse causes of action," is misguided, since an anti-SLAPP motion is not to be used for this purpose. (See *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 106 [15 Cal.Rptr.3d 215] ["the anti-SLAPP procedure may not be used like a motion to strike under section 436, eliminating those parts of a cause of action that a plaintiff cannot substantiate," and the trial court "need not parse the cause of action so as to leave only those portions it has determined have merit"].)

Goldberg's counsel's argument at the hearing that "the most important" reason for the delay was that it was not until Platypus took Goldberg's deposition that the anti-SLAPP defense came into focus, is also unpersuasive. Goldberg's claim in his anti-SLAPP motion that Platypus's action arises out of constitutionally protected activity is based primarily, if not entirely, on Platypus's *complaint.* For example, Goldberg argues, "[T]he gravamen, indeed the entirety, of Plaintiffs' Complaint arises out of Mr. GOLDBERG'S acts in furtherance of the constitutional rights to speech and petition . . . ." Goldberg cites no fewer than 13 different acts alleged in Platypus's complaint in support of this theory. In addition, Goldberg's counsel failed to identify anything specific from either Goldberg's deposition or any other discovery that revealed the alleged anti-SLAPP nature of this case in a manner that could not be gleaned from the complaint.[13]

---

[13] In his application, Goldberg vaguely asserted, "Plaintiffs' discovery, particularly their deposition examination of GOLDBERG, has confirmed that they are suing GOLDBERG largely for his role as the *de facto* officer and officer of the Corporate Plaintiffs while they were defendants in [a prior action]."

Goldberg has not demonstrated anything in the procedural history of this case, and specifically, in the litigation involving other parties, that would justify allowing the late filing. Although the litigation in the trial court was stayed for approximately a year, while Luce Forward appealed a denial of the trial court's order denying its motion to compel arbitration, there were approximately five months before the stay and approximately six months after the stay during which Goldberg could have attempted to file an anti-SLAPP motion. The lengthy delay in bringing the matter to trial occasioned by Luce Forward's interlocutory appeal is, if anything, a factor that weighs *against* granting Goldberg's application.

■ In this unusual statutory context, in which a party has the right to an interlocutory appeal of a denial of an anti-SLAPP motion, a trial court must be wary about freely granting a party the right to file an anti-SLAPP motion past the 60-day deadline. As reflected in *Olsen* and *Morin*, the Legislature's act in allowing an interlocutory appeal of the denial of an anti-SLAPP motion is clearly tied to the fact that the statute contemplates that most such motions will be filed within 60 days of the filing of the complaint. (See *Olsen, supra*, 134 Cal.App.4th at p. 287; *Morin, supra*, 122 Cal.App.4th at p. 681.)

■ While a trial court enjoys considerable discretion regarding whether to allow the late filing of an anti-SLAPP motion, in this case, the delay was extreme, the reasons Goldberg offered in his application for the delay in filing the motion were weak, the court's reasons for granting the application were unrelated to the purpose of the SLAPP statute, and the potential prejudice to Platypus, given the lengthy delay occasioned by the appeal, is great.[14] Rather than advancing the anti-SLAPP statute's purpose of promptly resolving SLAPP suits, the trial court's ruling had the effect of undermining that statute, as discussed in *Olsen*.[15]

In applying the standard of review articulated in *Olsen* to this case, "[T]he grounds given by the court for finding the anti-SLAPP motion [timely] are inconsistent with the substantive law of section 425.16, [and] the application to the facts of this case is outside the range of discretion conferred upon the trial court under that statute, read in light of its purposes and policy." (*Olsen, supra*, 134 Cal.App.4th at p. 285.)

---

[14] Goldberg filed his interlocutory appeal on February 1, 2007. His appeal has thus resulted in a delay of more than 18 months in the trial of this matter.

[15] The trial court's willingness to grant Goldberg's request pursuant to an ex parte application, without having fully read Platypus's opposition, also evinces a failure on the part of the trial court to properly exercise its discretion.

## IV.

## DISPOSITION

The trial court's November 1, 2006 order granting Goldberg's application to file an anti-SLAPP motion is reversed. The trial court's January 30, 2007 order on the merits of Goldberg's anti-SLAPP motion is vacated. The matter is remanded to the trial court with directions to deny Goldberg's application to file an anti-SLAPP motion, and for further proceedings. Respondents shall recover costs on appeal.

Benke, Acting P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 10, 2008, S167527.