Filed 8/20/21  Newport Harbor Offices & Marina v. Morris Cerullo World Evangelism CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NEWPORT HARBOR OFFICES & MARINA, LLC, | |
| Plaintiff and Respondent, | G058687 |
| v. | (Super. Ct. No. 30-2011-00479442) |
| MORRIS CERULLO WORLD EVANGELISM et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Thomas A. Delaney, Judge.  Affirmed in part and dismissed in part.

G10 Galuppo Law and Daniel T. Watts for Defendants and Appellants.

Copenbarger & Associates, Paul D. Copenbarger and Elaine B. Alston for Plaintiff and Respondent.

\*          \*          \*

**INTRODUCTION**

Defendant Morris Cerullo World Evangelism (MCWE) appeals from an order denying yet another special motion to strike pursuant to Code of Civil Procedure section 425.16 (section 425.16).[1] This anti-SLAPP motion was directed only to the last 14 words of paragraph 92 of the fourth amended complaint filed by Newport Harbor Offices & Marina, LLC (NHOM).[2] The trial court denied MCWE's anti-SLAPP motion on the merits. We affirm the order denying the motion but do so on the ground the motion was untimely filed.

In *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 641, 645 (*Newport Harbor Ventures*) the California Supreme Court held that an anti-SLAPP motion against an amended complaint may be filed without court permission only if the motion could not have been brought earlier. MCWE could have brought its anti-SLAPP motion nearly three years earlier than it did because paragraph 92 of the fourth amended complaint is identical to paragraph 119 of the third amended complaint, which was served in July 2016. Nearly five years ago, MCWE filed an anti-SLAPP motion to strike numerous allegations of NHOM's third amended complaint but decided not to include paragraph 119 in that earlier motion. MCWE has never offered a credible explanation for that decision.

Although the trial court considered MCWE's late-filed anti-SLAPP motion on the merits, the facts and circumstances of this case lead us to conclude the only discretion the trial court had was to deny the motion on the ground it was untimely.

---

[1] The anti-SLAPP statute. "'SLAPP' is an acronym for 'strategic lawsuit against public participation.'" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1.) We refer to the special motion authorized by section 425.16, subdivision (b)(1) as an anti-SLAPP motion.

[2] MCWE moved to strike this phrase: "thereafter allowing the unlicensed property manager to issue improper and void notices to NHOM."

2

Indeed, MCWE's anti-SLAPP motion was so unjustifiably late that it is hard to imagine a situation more strongly requiring outright denial on the ground of untimeliness.

The anti-SLAPP motion was also brought by defendants Plaza del Sol Real Estate Trust (Plaza del Sol) and Roger Artz, individually and as trustee of Plaza del Sol. Although the trial court granted the motion as to Plaza del Sol and Artz, they have appealed and argue the trial court erred by granting NHOM leave to amend. We dismiss their appeal because they are not aggrieved by the order granting their anti-SLAPP motion and, to the extent they are, the appeal is moot.

**FACTS**

*Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28 (*Newport Harbor Offices*), sets forth the underlying facts:

"'In 1963, John J. Jakosky and Katherine F. Jakosky, as lessors, and F. David Young, as lessee, entered into a 55-year ground lease (the Ground Lease) of unimproved real property (the Property) in Newport Beach. In 1987, a multistory office building and marina were constructed on the Property by the lessee at the time. Under the terms of the Ground Lease, the lessee is the owner of any improvements constructed on the Property.

"'Sometime before December 2003, [MCWE] became the lessee under the Ground Lease. In January 2004, [MCWE] entered in a sub-ground lease of the Property (the Sublease) with NHOM for a term expiring in November 2018. NHOM had been formed by Kent A. McNaughton and Copenbarger, who are its members. By quitclaim deed, [MCWE] conveyed title to the improvements on the Property to NHOM.

"'Also in January 2004, The Hazel I. Maag Trust (the Maag Trust) loaned $3 million to NHOM, which used the loan proceeds as partial payment to purchase the improvements on the Property and to acquire the Sublease. The loan was evidenced by a

3

promissory note, which was secured by a first priority deed of trust on the improvements and the Sublease. At the same time, NHOM executed a promissory note in the amount of $1.15 million in favor of Plaza del Sol. The promissory note to Plaza del Sol (the Plaza del Sol Note) was made to pay for the balance of the purchase price of the improvements and acquisition of the Sublease. The Plaza del Sol Note was secured by a second priority deed of trust (the Plaza del Sol Deed of Trust) on the improvements and the Sublease. Roger Artz was the trustee of Plaza del Sol and a vice-president of [MCWE].

"'In April 2010, [MCWE], Plaza del Sol, and the Maag Trust entered into an agreement (the Assignment for Collection), under the terms of which the Maag Trust agreed to make certain payments on the Plaza del Sol Note, to reimburse Plaza del Sol for real property taxes it paid on the improvements and the Property, and to make future payments to Plaza del Sol in the amount equal to payments due on the Plaza del Sol Note as such payments became due. [MCWE] and Plaza del Sol agreed not to declare a default under the Sublease on account of then existing defaults so long as the Maag Trust made the agreed-upon payments.

"'[Dennis] D'Alessio was the president of VMG [Vertical Media Group]. The complaint alleged that sometime before April 22, 2011, D'Alessio approached Artz and proposed that he cause [MCWE] and Plaza del Sol to breach the Ground Lease, the Sublease, and the Assignment for Collection, by declaring a default under the Sublease and terminating it. . . . In response to D'Alessio's proposal, [MCWE] and Plaza del Sol entered into a management agreement with VMG and authorized D'Alessio to serve NHOM with default notices.

"'On April 22, 2011, VMG, on behalf of [MCWE], served NHOM with a 30-day notice (the 30-day notice) to cure certain maintenance and other related defaults under the Ground Lease and the Sublease. The 30-day notice asserted that NHOM breached paragraph 1.2 of the Sublease by failing to maintain and repair both the improvements and the Property. The 30-day notice stated: "[W]e have conducted a

4

limited inspection of the Property and have discerned there to be a wholesale failure on the part of [NHOM] to perform even a modicum of maintenance or repair to any aspect of the building or any part of it, to include major structural components." The 30-day notice included a list of maintenance and repair issues and demanded that NHOM address them within 30 days.

"'By letter dated May 18, 2011, Copenbarger, on behalf of NHOM, responded to the 30-day notice. He asserted, among other things, the sublessee's duty to maintain and repair under the Sublease did not extend to the improvements on the Property because the improvements were never subject to the Ground Lease and were conveyed by quitclaim deed to NHOM. By letter of the same date, Lloyd Copenbarger, as trustee of the Maag Trust, informed Artz and Plaza del Sol that the Maag Trust had requested that a property management company determine what repairs and maintenance needed to be made at the Property and arrange for those repairs and maintenance to be made, at the Maag Trust's expense.

"'On May 26, 2011, VMG, on behalf of [MCWE], served a three-day notice to cure or quit (the three-day notice) on NHOM, based on "[y]our failure to cure the breaches of your Sub-Ground Lease . . . ." Five days later, Copenbarger, both in his individual capacity and derivatively on behalf of NHOM, filed this lawsuit. The complaint asserted three causes of action: (1) declaratory relief against [MCWE], Plaza del Sol, D'Alessio, and VMG; (2) breach of contract against [MCWE] and Plaza del Sol; and (3) intentional interference with contract against Artz, D'Alessio, and VMG. In the declaratory relief cause of action, Copenbarger alleged a controversy exists among the parties "concerning their respective rights and duties arising under" the Ground Lease, the Sublease, the Plaza del Sol Deed of Trust, and the quitclaim deed. Copenbarger contended, among other things, NHOM had no duty to repair the improvements to the Property, the 30-day notice and the three-day notice were premature and did not comply with the Ground Lease, and NHOM is the owner of the improvements to the Property.

5

"'[¶] . . . [¶]

"'In June 2011, [MCWE] commenced an unlawful detainer action against NHOM predicated on the 30-day notice and the three-day notice. The unlawful detainer complaint alleged NHOM was in breach of the maintenance and repair covenant of the Sublease, alleged service of the 30-day notice and the three-day notice, and attached copies of those notices.

"'NHOM demurred to the unlawful detainer complaint, and, in response, [MCWE] filed an amended unlawful detainer complaint. Instead of alleging breach of the maintenance and repair covenant, the amended unlawful detainer complaint alleged nuisance, that is, "[t]he failures of NHOM to effect repairs to and/or maintenance on the [P]roperty have resulted in public and private nuisances and dangerous conditions, caused the [P]roperty to be in violation of building and zoning codes, and constitute waste . . . ." On August 1, 2011, VMG, on behalf of [MCWE], served a second 30-day notice on NHOM. The second 30-day notice was substantially the same as the first one, but asserted that NHOM's failure to make the identified repairs and maintain the improvements to the Property "has allowed the [P]roperty to become a public and private nuisance, constitutes waste, and constitutes violations of the building codes of the City of Newport Beach."'" (*Id*. at pp. 34-37, footnote omitted.)

## PROCEDURAL HISTORY

In July 2016, NHOM filed a third amended complaint. Against MCWE and Plaza del Sol, the third amended complaint asserted causes of action for declaratory relief, breach of contract, and intentional interference with contractual relations, and against MCWE and Artz asserted a cause of action for trespass. Paragraph 119 of the third amended complaint alleged: "Defendants MCWE, PDSRET and DOES 1 through 49 breached the SUBLEASE by entering into an illegal agreement with NHV for the management of MCWE's interest in the PROPERTY by an entity not licensed by the

6

Department of Real Estate and thereafter allowing the unlicensed property manager to issue improper and void notices to [NHOM]."

In August 2016, MCWE filed an anti-SLAPP motion to strike the first three causes of action (two causes of action for declaratory relief and one for breach of contract) and, in the alternative, to strike paragraphs 59-61, 65-67, 69, 72-77, 80, 81, 82(G), 82(P), 82(Q), 86, 87(B)-87(J), 91, 91-118, and 120 of the third amended complaint. Missing from that list of allegations was paragraph 119.

The trial court denied the anti-SLAPP motion directed to the third amended complaint. In *Newport Harbor Offices, supra*, 23 Cal.App.5th 28 we reversed in part. The disposition of that opinion states: "The order denying the anti-SLAPP motion as to [MCWE] and Plaza del Sol is reversed in part and the matter is remanded with directions to grant the motion as to paragraphs 87(F) through (J), 97 through 117, and 120 of the third amended complaint and the claims arising from those paragraphs and to conduct further proceedings, if requested, in which attorney fees may be considered. In all other respects, and as to Artz, the order denying the anti-SLAPP motion is affirmed. Because each side prevailed in part, no party shall recover costs on appeal." (*Id*. at p. 52.)

Our opinion in *Newport Harbor Offices* was issued in April 2018. In March 2019, NHOM filed a fourth amended complaint which eliminated the allegations we had directed to be stricken. Against MCWE and Plaza del Sol, the fourth amended complaint asserted causes of action for breach of contract and trespass and, against Artz as an individual, asserted a cause of action for trespass. Paragraph 92 of fourth amended complaint was precisely the same as paragraph 119 of the third amended complaint: "Defendants MCWE, PDSRET and DOES I through 49 breached the SUBLEASE by entering into an illegal agreement with NHV for the management of MCWE's interest in the PROPERTY by an entity not licensed by the Department of Real Estate and *thereafter allowing the unlicensed property manager to issue improper and void notices to NHOM*." (Italics added.)

7

In June 2019, MCWE, Plaza del Sol, and Artz filed an anti-SLAPP motion to strike the final 14 words of paragraph 92 (italicized above) of the fourth amended complaint: "thereafter allowing the unlicensed property manager to issue improper and void notices to NHOM." In its opposition to the motion, NHOM asserted the motion was untimely because it had not been filed within 60 days of the first complaint that included the allegation made in paragraph 92 of the fourth amended complaint. NHOM cited *Newport Harbor Offices, supra*, 23 Cal.App.5th 28 and argued that paragraph 92 of the fourth amended complaint was identical to paragraph 119 of the third amended complaint.

MCWE, Plaza del Sol, and Artz argued their anti-SLAPP motion was timely because our opinion in *Newport Harbor Offices, supra*, 23 Cal.App.5th 28 constituted new law. They also argued that by stipulating to a continuance of hearing on their anti-SLAPP motion, NHOM agreed the trial court could hear and consider it. MCWE, Plaza del Sol, and Artz never obtained leave of court to file an untimely motion.

On the day they filed the anti-SLAPP motion, MCWE, Plaza del Sol, and Artz filed a demurrer and motion for judgment on the pleadings directed to the breach of contract and trespass causes of action of the fourth amended complaint. Defendants Dennis D'Alessio, Vertical Media Group, Inc. (VMG), and Newport Harbor Ventures, LLC (NHV), filed a motion to strike the punitive damages and alter ego allegations. MCWE , Plaza del Sol, and Artz were permitted to join in that motion to strike.

A hearing on the anti-SLAPP motion, the demurrer, and the judgment on the pleadings was conducted on October 31, 2019. The court issued a tentative ruling denying the anti-SLAPP motion as to MCWE and granting it as to Plaza del Sol and Artz, and took the motion under submission. With regard to the motion to strike brought by D'Alessio, VMG, and NHV, the court denied the motion as to the punitive damages allegations and granted the motion as to the alter ego allegations. NHOM was granted leave to amend.

By November 19, 2019, the court had not issued a ruling on the anti-SLAPP motion. On that date, NHOM filed a fifth amended complaint as the trial court had permitted it to do. The fifth amended complaint amended the alter ego allegations against D'Alessio, VMG, and NHV, and did not amend any allegations directed to MCWE, Plaza del Sol, or Artz.

In a minute order entered on November 27, 2019, the trial court denied MCWE's anti-SLAPP motion and granted Plaza del Sol's/Artz's anti-SLAPP motion. The court "exercise[d] its discretion" to consider the motion even though it was filed more than 60 days after service of the third amended complaint. NHOM had conceded that paragraph 92 identified protected activity, and the court concluded that NHOM had met its burden of demonstrating the merit of its claim against MCWE by establishing a probability of success. The court concluded that NHOM had not met its burden of demonstrating the merit of its claim against Plaza del Sol because NHOM had not presented admissible evidence that Plaza del Sol was a party to the contract sued upon.

The demurrers to the breach of contract cause of action were overruled with respect to MCWE and sustained with leave to amend with respect to Artz as trustee of Plaza del Sol. The demurrers to the trespass cause of action were overruled with respect to MCWE and Artz as trustee of Plaza del Sol, and sustained with leave to amend with respect to Artz acting individually. NHOM was granted leave to amend the breach of contract cause of action and the trespass cause of action.

MCWE, Plaza del Sol, and Artz timely appealed from the order on the anti-SLAPP motion. After the briefing was completed, we invited the parties to submit supplemental briefing on the issue whether the anti-SLAPP motion directed to the fourth amended complaint was untimely under *Newport Harbor Ventures, supra*, 4 Cal.5th 637. NHOM filed a supplemental brief, as did MCWE, Plaza del Sol, and Artz.

9

# DISCUSSION

## I.

## Basic Principles of anti-SLAPP Law

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1) (section 425.16(b)(1)).)

The anti-SLAPP statute provides a procedure for weeding out, *at an early stage*, meritless claims arising from protected activity. (*Baral v. Schnitt, supra*, 1 Cal.5th at p. 384.) "'The Legislature enacted section 425.16 to prevent and deter "lawsuits [referred to as SLAPPs] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." [Citation.] Because these meritless lawsuits seek to deplete "the defendant's energy" and drain "his or her resources" [citation], the Legislature sought "'to prevent SLAPPs by ending them early and without great cost to the SLAPP target'" [citation]. Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation. [Citation.] In doing so, section 425.16 seeks to limit the costs of defending against such a lawsuit.'" (*Newport Harbor Ventures, supra*, 4 Cal.5th at p. 642.)

"Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.' [Citations.]" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061.)

10

## II.

### MCWE's anti-SLAPP Motion Was Not Timely Filed

#### A. *NHOM Was Not Required to File a Notice of Appeal for This Court to Consider the Timeliness of MCWE's anti-SLAPP Motion*

In their supplemental brief, MCWE, Plaza del Sol, and Artz argue the issue of the timeliness of their anti-SLAPP motion is not subject to appellate scrutiny because NHOM did not file a notice of appeal. As to Plaza del Sol and Artz, that proposition is correct; as to MCWE it is not.

MCWE cites authority which, it claims, holds that a respondent who has not appealed from a judgment may not assert error on appeal. (E.g., *Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 665; *Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439.) This proposition is incomplete. The rule is that "'[t]o obtain *affirmative relief* by way of appeal, respondents must themselves file a notice of appeal and become cross-appellants.'" (*Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560, 585, italics added.) Code of Civil Procedure section 906 creates an exception to the rule that a respondent may not urge error on appeal: "[Section 906] allows a respondent to 'request the reviewing court to . . . review [the judgment] for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken.' [Citations.] [¶] . . . [¶] The exception under Code of Civil Procedure section 906 is intended to permit a respondent to assert a legal theory that will result in affirmance of the judgment notwithstanding an appellant's contentions." (*Preserve Poway v. City of Poway, supra,* 245 Cal.App.4th at pp. 585-586.)

"[T]]he exception in Code of Civil Procedure section 906 applies where a respondent asserts an alternate legal theory upon which the judgment may be affirmed, notwithstanding the court's resolution of the appellant's contentions in the appellant's

11

favor." (*Preserve Poway v. City of Poway, supra*, 245 Cal.App.4th at p. 586.) There also is a rule specifically pertaining to anti-SLAPP motions: "A prevailing party on an anti-SLAPP motion need not file a cross-appeal to preserve his disagreement with the trial court's reasoning." (*Klem v. Access Ins. Co.* (2017) 17 Cal.App.5th 595, 609.)

As to MCWE, NHOM is not seeking affirmative relief on appeal. The trial court denied MCWE's anti-SLAPP motion, and NHOM is defending against MCWE's attempt to overturn that decision. That MCWE's anti-SLAPP motion was untimely is an alternative legal theory which will result in affirmance of the trial court's order notwithstanding MCWE's contention that the trial court erred by denying the motion.

Plaza del Sol and Artz's appeal is different. The trial court *granted* the anti-SLAPP motion as to them. They are appealing the order granting their motion (for reasons we shall explain, Plaza del Sol and Artz's appeal will be dismissed). The untimeliness of Plaza del Sol and Artz's anti-SLAPP motion is an alternative legal theory that would result in reversal, i.e., affirmative relief in favor of NHOM.

### B. *MCWE's anti-SLAPP Motion Was Untimely under* Newport Harbor Ventures

An anti-SLAPP motion must be filed "within 60 days of the service of the complaint or, in the court's discretion, at any time upon terms it deems proper." (§ 425.16, subd. (f).) The purpose of the statutory time limitation is to permit "'the defendant to test the foundation of the plaintiff's action before having to "devote its time, energy and resources to combating" a "meritless" lawsuit'" and "'to avoid tactical manipulation of the stays that attend anti-SLAPP proceedings.'" (*Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 783.)

An anti-SLAPP motion directed to an amended complaint may not seek to strike allegations or dismiss causes of action that had been included in earlier complaints. (*Newport Harbor Ventures, supra*, 4 Cal.5th at p. 639.) "'An amended complaint

12

reopens the time to file an anti-SLAPP motion without court permission only if the amended complaint pleads new causes of action that could not have been the target of a prior anti-SLAPP motion, or adds new allegations that make previously pleaded causes of action subject to an anti-SLAPP motion.'" (*Id*. at p. 641.)

NHOM filed and served its third amended complaint in June 2016. Paragraph 92 of the fourth amended complaint is identical to paragraph 119 of the third amended complaint. MCWE brought anti-SLAPP motion to strike the first three causes of action and, in the alternative to strike paragraphs 59-61, 65-67, 69, 72-77, 80, 81, 82(G), 82(P), 82(Q), 86, 87(B)-87(J), 91, 91-118, and 120 of the third amended complaint. In that motion, MCWE could have moved to strike paragraph 119 from the third amended complaint. MCWE chose not to do so. In June 2019, MCWE filed an anti-SLAPP motion to strike the final 14 words of paragraph 92 of the fourth amended complaint, even though it was the same as paragraph 119 of the third amended complaint.

This situation comes squarely within the rule of *Newport Harbor Ventures, supra*, 4 Cal.5th 637, which arose out of same dispute and litigation that spawned the present appeal. In *Newport Harbor Ventures*, the plaintiffs sued the defendants for a number of causes of action, including breach of written contract and breach of the implied covenant of good faith and fair dealing. (*Id*. at p. 640.) The complaint alleged that defendants had fraudulently settled an unlawful detainer action involving the real property that was subject to the Sublease. (*Ibid*.) Over two years later, the Plaintiffs filed a third amended complaint which also alleged that defendants had fraudulently settled the unlawful detainer action. (*Ibid*.) The third amended complaint contained the same causes of action for breach of written contract and breach of the implied covenant of good faith contained in the original complaint and added, for the first time, causes of action for quantum meruit and promissory estoppel. (*Ibid*.)

Within 60 days of the filing of third amended complaint, the defendants filed an anti-SLAPP motion to strike it. (*Newport Harbor Ventures, supra*, 4 Cal.5th at

13

p. 640.)  The trial court denied the motion on the ground it was untimely.  (*Ibid*.)  The trial court noted that the complaint and every pleading filed by the plaintiffs thereafter referred to the settlement agreement "'at the heart'" of the defendants' allegations. (*Ibid*.)  A panel of this court affirmed that part of the trial court's ruling.  (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, affd. *Newport Harbor Ventures, supra*, 4 Cal.5th 637.)  We held the third amended complaint did not reopen the time to file an anti-SLAPP motion without trial court permission because the amended complaint did not plead new causes of action that could not have been the target of a prior anti-SLAPP motion and did not add new allegations that would make previously pleaded causes of action subject to an anti-SLAPP motion. (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism, supra,* 6 Cal.App.5th at p. 1219.)

The California Supreme Court affirmed the judgment and adopted the holding of our opinion.  (*Newport Harbor Ventures, supra*, 4 Cal.5th at p. 646.)  The Supreme Court recognized, as we had, that granting a defendant an absolute right to bring an anti-SLAPP motion against an amended complaint "'would encourage gamesmanship that could defeat rather than advance'" the purpose of ending meritless SLAPPs early in the litigation.  (*Id.* at p. 644.)  The Supreme Court stated:  "In this case, as the trial court noted when it exercised its discretion to deny a late filing, much litigation, including discovery, had already been conducted for two years before the anti-SLAPP motion brought it to a halt.  It is far too late for the anti-SLAPP statute to fulfill its purpose of resolving the case promptly and inexpensively. . . .  To minimize this problem, section 425.16, subdivision (f), should be interpreted to permit an anti-SLAPP motion against an amended complaint if it could not have been brought earlier, but to prohibit belated motions that could have been brought earlier (subject to the trial court's discretion to permit a late motion).  This interpretation maximizes the possibility the anti-SLAPP statute will fulfill its purpose while reducing the potential for abuse."  (*Id*. at p. 645.)

14

Here, filing the fourth amended complaint did not reopen the 60-day time period for bringing MCWE's anti-SLAPP motion because that motion could have been brought earlier. MCWE could have moved to strike paragraph 119 from the third amended complaint but chose not to do so. The anti-SLAPP motion to strike paragraph 92 of the fourth amended complaint was filed nearly three years after service of the third amended complaint and was therefore untimely.

MCWE argues its anti-SLAPP motion was timely, notwithstanding *Newport Harbor Ventures*, because the trial court exercised its discretion under section 425.16, subdivision (f) to consider the late-filed motion. In subpart C., we shall explain why the trial court should have denied the anti-SLAPP motion outright on the ground of untimeliness, but first, we note, MCWE did not seek leave of court to file its anti-SLAPP motion before filing it: MCWE simply filed the motion and, in the motion papers, never even mentioned the *Newport Harbor Ventures* case.

Many courts have interpreted section 425.16, subdivision (f) as requiring advance leave before filing a motion past the 60-day deadline. (See *Hewlett-Packard Co. v. Oracle Corp.* (2015) 239 Cal.App.4th 1174, 1186-1187 [collecting cases holding that advance leave is required].) We agree that is the better interpretation. In *Newport Harbor Ventures*, the Supreme Court held that an amended complaint reopens the time to *file* an anti-SLAPP motion *without court permission* if the amended complaint pleads new causes of action that could not have been the subject of a prior anti-SLAPP motion. (*Newport Harbor Ventures, supra*, 4 Cal.5th at pp. 641, 646.) The plain meaning of this holding is the court's permission must be obtained *before* the motion is *filed*, not afterward. Had MCWE, Plaza del Sol, and Artz sought advance leave to file the anti-SLAPP motion, and had the trial court correctly refused to allow the motion to be filed late, the litigants would have saved themselves a great deal of trouble and expense, and judicial resources would not have been wasted.

But even if advance leave were not required to late-file an anti-SLAPP motion, it would have been appropriate to require MCWE to obtain advance leave to file its motion given the extreme delay in bringing it. Basic civility and respect for the court and the litigants, not to mention a modicum of caution, should have led MCWE to understand that it is better to seek permission than forgiveness.

C. *The Trial Court Had Discretion Only to Deny MCWE's anti-SLAPP Motion as Untimely*

A trial court's ruling on a request to file a late anti-SLAPP motion is reviewed under the abuse of discretion standard. (*Hoang v. Tran* (2021) 60 Cal.App.5th 513, 526.) Although a trial court has discretion to allow a late-filed anti-SLAPP motion, such discretion is not unbounded: "[T]he court must exercise this discretion consistent with the purposes of the statute and must be mindful that the 60-day deadline is the general rule. [Citation.] '[T]he Legislature's act in allowing an interlocutory appeal of the denial of an anti-SLAPP motion is clearly tied to the fact that the statute contemplates that most such motions will be filed within 60 days of the filing of the complaint.' [Citation.] Thus, a 'trial court must be wary about freely granting a party the right to file an anti-SLAPP motion past the 60-day deadline.' [Citation.] In determining whether to permit a late motion, the most important consideration is whether the filing advances the anti-SLAPP statute's purpose of examining the merits of covered lawsuits in the early stages of the proceedings. [Citations.] Other relevant factors include the length of the delay, the reasons for the late filing, and any undue prejudice to the plaintiff." (*San Diegans for Open Government v. Har Construction, Inc.* (2015) 240 Cal.App.4th 611, 624 (*San Diegans*).)

In *San Diegans*, the Court of Appeal concluded the trial court erred by allowing the defendant to file an anti-SLAPP motion 16 months after the first amended complaint was filed. (*San Diegans, supra*, 240 Cal.App.4th at p. 616.) There, as in the

16

present case, the trial court had allowed the late filing, but denied the anti-SLAPP motion on the merits. The Court of Appeal in *San Diegans* affirmed but on the ground the motion should have been rejected as untimely. (*Ibid.*) The court found the lengthy delay was contrary to the anti-SLAPP statute's "fundamental purpose" of evaluating claims at the outset of the litigation and, by halting all discovery, resulted in "obvious prejudice." (*Id.* at p. 624.) The court explained: "An anti-SLAPP motion is not a vehicle for a defendant to obtain a dismissal of claims in the middle of litigation; it is a procedural device to prevent costly, unmeritorious litigation at the initiation of the lawsuit. When a case has been pending long after the 60-day period, the parties have presumably engaged in pretrial litigation and the purposes of an anti-SLAPP motion are no longer applicable." (*Id.* at pp. 625-626.)

The present case presents a far worse instance of delay than that of *San Diegans.* Not only was the delay much longer here (nearly three years) but MCWE easily could have included the allegations of paragraph 92 in its anti-SLAPP motion directed to the third amended complaint. Instead, MCWE did not move to strike that allegation until nearly three years later.

Permitting MCWE to file its anti-SLAPP motion to strike paragraph 92 of the fourth amended complaint defeated rather than advanced the anti-SLAPP statute's purpose of promptly and inexpensively resolving lawsuits that threaten free speech. (See *Newport Harbor Ventures, supra*, 4 Cal.5th at pp. 641, 646; *San Diegans, supra*, 240 Cal.App.4th at p. 625.) Filing an anti-SLAPP motion nearly three years after the statutory deadline is hardly prompt. This case is not in its early stages: NHOM filed its initial complaint in 2011. The lengthy motion and opposition papers attest that resolution of the motion was not inexpensive for any litigant. Thus, it was "far too late for the anti-SLAPP statute to fulfill its purpose of resolving the case promptly and inexpensively." (*Newport Harbor Ventures, supra*, at p. 645.) We also are mindful of and concerned about the enormous cost to both the trial court and this court of the motion

17

and MCWE's appeal. We note that the clerk's transcript in this appeal is 2,213 pages in length—for an appeal of an order denying a motion to strike 14 words.

The Supreme Court in *Newport Harbor Ventures* recognized, as had prior Supreme Court and Court of Appeal opinions, that the anti-SLAPP statute is prone to abuse because filing an anti-SLAPP motion causes a stay of discovery, and the appeal of an order granting or denying an anti-SLAPP motion automatically stays trial court proceedings. (*Newport Harbor Ventures, supra*, 4 Cal.5th at p. 645; see § 425.16, subd. (g).) Those were the very effects of MCWE's anti-SLAPP motion. We cannot help but conclude that MCWE, which is represented by competent counsel who is well-versed in anti-SLAPP law, filed its motion precisely to achieve those effects.

MCWE has never offered a credible explanation for why it did not include paragraph 119 of the third amended complaint (paragraph 92 of the fourth amended complaint) among the many other allegations in the anti-SLAPP motion directed to the third amended complaint. MCWE argues it did not do so, and its anti-SLAPP motion was timely, because our opinion in *Newport Harbor Offices, supra*, 23 Cal.App.5th 28 constituted new law which, under law of the case principles, "dictate[d]" the trial court to strike paragraph 92. MCWE argues that in *Newport Harbor Offices, supra*, 23 Cal.App.5th 28, this court held, "for the first time with such clarity, that notices preparatory to filing an unlawful detainer action are protected by the anti-SLAPP statute."

That excuse does not hold up under scrutiny. The issue of whether and under what circumstances notices preparatory to filing an unlawful detainer action implicate constitutionally protected activity was decided long before our opinion in *Newport Harbor Offices, supra*, 23 Cal.App.5th 28. (E.g., *Ulkarim v. Westfield LLC* (2014) 227 Cal.App.4th 1266; *Copenbarger v. Morris Cerullo World Evangelism* (2013) 215 Cal.App.4th 1237.) The law on that issue was certain enough that MCWE moved to strike from the third amended complaint numerous allegations regarding service of

18

notices preparatory to the filing of the unlawful detainer action in this case. MCWE's opening brief in *Newport Harbor Offices* extensively cited *Ulkarim*, *Copenbarger* and other opinions addressing notices preparatory to filing an unlawful detainer action.[3] So well was the law established that NHOM did not contest the proposition that such notices were protected activity under the anti-SLAPP statute. The contested issues addressed in *Newport Harbor Offices* were whether NHOM's causes of action arose out of the allegations of protected activity or whether the allegations of protected activity provided context for or evidence of the parties' disputes, and what claims arose out of the allegations of protected activity. (*Newport Harbor Offices, supra*, 23 Cal.App.5th at pp. 44-49.)

MCWE also claims that NHOM stipulated to allowing MCWE's anti-SLAPP motion to be heard. This claim misrepresents the record. MCWE filed its anti-SLAPP motion without advance leave of court and, on its own, set the motion for a hearing. Later, NHOM agreed to stipulate to *continue* that hearing date. Stipulating to a continuance of the hearing date does not constitute a stipulation to permit MCWE to file an anti-SLAPP motion beyond the statutory deadline.

MCWE argues it was improper for NHOM to include the allegations of paragraph 92 in the fourth amended complaint because in *Newport Harbor Offices, supra*, 23 Cal.App.4th at page 52, we directed the trial court to strike the claims arising out of the paragraphs directed to be stricken from the third amended complaint. Those claims, MCWE suggests, included claims arising out of paragraph 119 (paragraph 92 of the fourth amended complaint). The disposition in *Newport Harbor Offices* directed the trial court to grant MCWE's anti-SLAPP motion as to the specific paragraphs identified

---

[3] On our own motion, we take judicial notice of MCWE's appellant's opening brief and NHOM's respondent's brief in *Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism*, G054146, as records of a court of this state. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

and the claims arising out of those paragraphs, which did not included paragraph 119. (*Ibid.*)  Moreover, if the stricken claims included those arising out of paragraph 119/paragraph 92, then there would have been no basis for MCWE's anti-SLAPP motion directed to the fourth amended complaint.  In that situation, paragraph 92 would have done nothing more than provide context without supporting a claim for recovery.  (*Baral v. Schnitt, supra*, 1 Cal.5th at p. 394.)

Every case will reach a point at which an anti-SLAPP motion cannot perform its intended function, and therefore, if the motion is untimely, the trial court would have no discretion but to deny it on that ground.  (See *Hewlett-Packard Co. v. Oracle Corp., supra*, 239 Cal.App.4th at p. 1189.)  This case had reached that point by the time MCWE filed its anti-SLAPP motion that is the subject of this appeal.  The motion was nearly three years late.  The object of the motion—the allegations of paragraph 92 of the fourth amended complaint—could have been, but were not, included in the earlier anti-SLAPP motion directed to the third amended complaint.  MCWE has never provided a plausible reason for the delay or for why it did not include paragraph 119 in its prior anti-SLAPP motion.  MCWE never requested advance leave to late file the anti-SLAPP motion directed to the fourth amended complaint.  The motion was brought to strike a mere 14 words from the fourth amended complaint and would not have resolved the litigation or any whole cause of action.  Filing the motion caused discovery to be stayed again, and MCWE's appeal has caused trial to be delayed for several more years.  The motion has been expensive for the litigants and has wasted judicial resources.  None of the salutary purposes of the anti-SLAPP statute has been advanced by the motion, while the statute's potential abuse has been realized.  Under these circumstances, the trial court could have exercised its discretion only by denying MCWE's anti-SLAPP motion as untimely.

20

## III.

### The Appeal by Plaza del Sol and Artz Is Dismissed

The trial court granted the anti-SLAPP motion as to Plaza del Sol and Artz. Although they prevailed, Plaza del Sol and Artz have appealed that ruling nonetheless: They contend the trial court erred by granting NHOM leave to amend the complaint.

The trial court did not grant Plaza del Sol and Artz's anti-SLAPP motion with leave to amend. The court simply granted the motion. Leave to amend was granted in connection with the order sustaining *demurrers*, not the anti-SLAPP motion. The notice of appeal in this case identifies only "Order on anti-SLAPP motion, CCP 425.16(i)" as the order being appealed. Plaza del Sol and Artz were not aggrieved by the order granting their anti-SLAPP motion, and, therefore, they do not have standing to appeal it. (Code Civ. Proc., § 902; see *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 263.)

Further, whatever challenge Plaza del Sol and Artz might have had to the order granting NHOM leave to amend is moot. An appeal is moot when any ruling by the appellate court can have no practical impact or provide the parties effective relief. (*Los Angeles Internat. Charter High School v. Los Angeles Unified School Dist.* (2012) 209 Cal.App.4th 1348, 1354.) NHOM did not file an amended complaint in response to the order sustaining the demurrers to the breach of contract and trespass cause of action, and the time in which NHOM could have filed an amended complaint has long since passed. If the order granting NHOM leave to amend were erroneous, there was no harm suffered, and so any relief we might provide would have no practical effect on the parties. "An appeal will be dismissed where the issues have become moot." (*Ibid.*)

On November 19, 2019, before the trial issued its order on the anti-SLAPP motions, NHOM filed a fifth amended complaint in response to the trial court's order granting, with leave to amend, the motion brought by D'Alessio, VMG, and NHV to strike the alter ego allegations. The fifth amended complaint did not amend any

allegation pertaining to Plaza del Sol, Artz, or MCWE.  The fifth amended complaint did nothing more than add allegations supporting alter ego liability of D'Alessio, VMG, and NHV—as NHOM was permitted to do.

Plaza del Sol and Artz claim they now must file another anti-SLAPP motion directed to the fifth amended complaint because it includes the allegation ordered stricken from the fourth amended complaint.  No.  Because MCWE's anti-SLAPP motion was denied, a decision we affirm, the allegations of paragraph 92 would remain in the fourth amended complaint and were properly carried forward into the fifth amended complaint.  As to Plaza del Sol and Artz only, the allegations of paragraph 92 are deemed stricken from the fourth amended complaint and would be deemed stricken from the fifth amended complaint too.

## DISPOSITION

The appeal is dismissed as to Plaza del Sol and Artz.  The order denying MCWE's anti-SLAPP motion is affirmed.  NHOM to recover costs on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

22